David M. Shaby II, Esq. (97871)
  dshaby@shabyandassociates.com
R. Christopher Harshman, Esq. (248214)
  charshman@shabyandassociates.com,
DAVID M. SHABY II & ASSOCIATES, APC
11949 Jefferson Boulevard, Suite 104
Culver City, California 90230
Telephone:   (310) 827-7171
Facsimile:    (310) 822-8529
Service address: docket@shabyandassociates.com

*Attorneys for Torrance Airport Association*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Torrance Airport Association, Chapter of California Pilots Association, a California Nonprofit Public Benefit Corporation,<br><br>　　　　　Petitioner/Plaintiff,<br><br>vs.<br><br>City of Torrance,<br><br>　　　　　Respondent/Defendant. | Case no. CV 24-2692-JFW(MRWx)<br><br>Assigned to the Hon. John F. Walter<br><br>**RESPONSE OF TORRANCE AIRPORT ASSOCIATION TO ORDER TO SHOW CAUSE RE REMAND (ECF NO. 13)** |

Petitioner/Plaintiff Torrance Airport Association, Chapter of California Pilots Association, a California Nonprofit Public Benefit Corporation ("TAA" or the "Airport Association") hereby responds[1] to the Court's April 30, 2024 Order to Show Cause why this Action Should not be Remanded to Los Angeles County Superior Court for Lack of Subject Matter Jurisdiction (ECF No. 13, the "Order").

This dispute arises from measures taken by Respondent/Defendant City of Torrance ("City") to charge fees to and govern operations of aircraft operating at the

---

[1] Although predominantly directed to "the party invoking federal jurisdiction, Respondent" City of Torrance (the "City") (Order at 2), the Court additionally ordered "Petitioner […] to respond, in writing, to the order to show cause on or before May 6, 2024." Order at 3.

11624221                                                    1
TORRANCE AIRPORT ASSOCIATION'S RESPONSE TO ORDER TO SHOW CAUSE RE REMAND

City-owned Zamperini Field a/k/a Torrance Municipal Airport (the "Airport"). The City has enacted municipal code sections in conflict with the Federal Aviation Act, including specifically 49 U.S.C. § 40103(a)(1) (in the current Complaint), and (*inter alia*) Sections 40103(e) and 40116(e)(2) of the Act.

## I. The exclusive federal control of aviation generally

As United States Supreme Court Justice Robert H. Jackson opined: "Congress has recognized the national responsibility for regulating air commerce. **Federal control is intensive and exclusive.** Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxies onto a runway it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and orders. Its privileges, rights, and protection, so far as transit is concerned, it owes **to the Federal Government alone**." *Nw. Airlines v. State of Minnesota*, 322 U.S. 292, 303 (1944) (concurrence) (emphasis added).

### A. Preemption

The Supremacy Clause provides that the laws of the United States "shall be the supreme law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Accordingly, Congress has the power to enact statutes that preempt state law. *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989). Preemption can be express or implied. *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 220-21 (2d Cir. 2008) (per curiam). Express preemption is present when "a federal statute expressly directs that state law be ousted." *Id*. at 220. Implied preemption comes in two varieties, known as field preemption and conflict preemption. Conflict preemption arises when state law "actually conflicts with federal law," *Id*. at 220, such that it is not possible to comply with both and "state law stands as

2

TORRANCE AIRPORT ASSOCIATION'S RESPONSE TO ORDER TO SHOW CAUSE RE REMAND

an obstacle to the accomplishment" of the congressional objective. *Hillsborough Cnty. v. Automated Med. Labs*, 471 U.S. 707, 713 (1985).

## II. The Court has jurisdiction over this case, which arises under the laws of the United States

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)).

"Except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### A. This case requires the interpretation and application of federal statutes, necessarily raised here

The Court's continued jurisdiction over this case is appropriate under 28 U.S.C. § 1441(a) because this Court would have had original subject matter jurisdiction over TAA's claim pursuant to 28 U.S.C. § 1331 had the Airport Association elected to file the action initially in federal court. This is because of the pervasive federal regulation of aviation and the fact that if the City is allowed to dictate aircraft operations and charge unreasonable fees in an exclusive scheme, it will be in violation of law codified in the United States Code: The TAA's current complaint alleges the City's landing fee scheme is a violation of the federal government's exclusive jurisdiction over aircraft in flight, in

violation of 49 U.S.C. § 40103(a)(1)[2]; and, TAA is preparing to amend its complaint[3], to add a prayer for injunctive relief, to add allegations concerning violations of the "exclusive rights" provision codified at 49 U.S.C. § 40103(e)[4], and that the "arbitrary and capricious" (Complaint, ¶¶ 34–42) landing fees are unreasonable and therefore a violation of 49 U.S.C. § 40116(e)(2)[5]. TAA will also be adding a cause of action under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

Finally, the Airport Association will include a new, intrinsically related, cause of action seeking an injunction barring the City's illegal attempt to govern aircraft in flight by prohibiting low approach and touch-and-go operations at the Airport, also in violation of Section 40103(a)(1).

These questions must necessarily be resolved to determine the parties' rights in this case. If the City cannot charge unreasonable landing fees and/or cannot create exclusive rights in certain users of the Airport to the exclusion of others, it is in violation of federal law and the landing fees cannot stand; if it cannot regulate aircraft in flight, the prohibitions on certain aeronautical operations must be enjoined.

**B.     The application of federal law is disputed**

As the Complaint alleges (¶¶ 29–30), and as the amended Complaint will further assert, the City and the TAA (and the City and the Federal Aviation Administration ("FAA")) fundamentally disagree as to whether or not the City must comply with federal law. The City has several times written the FAA protesting that its municipal code provisions are not in conflict with federal law (*Id.*), only to be always rebuffed.

Further, recently in an enforcement action brought by another Airport user before the FAA under 14 C.F.R. Part 16 (*Sling Flying Club LLC v. City of Torrance*, FAA Docket No.

---

[2] "Sovereignty and Public Right of Transit.— The United States Government has exclusive sovereignty of airspace of the United States."

[3] As partially discussed in the Rule 26 Joint Report filed with the Court on Friday, May 3rd, 2024 (ECF No. 17).

[4] "A person does not have an exclusive right to use an air navigation facility on which Government money has been expended."

[5] The City may only "levy or collect … ***reasonable*** … landing fees, and other service charges from aircraft operators for using" the facilities of the Airport. (Emphasis added.)

16-23-20)[6], on January 31, 2024, the City brought a motion to dismiss claiming it was not bound by any federal obligations in its operation of the Airport (49 U.S.C. § 40103(e) was specifically raised by the complainant in that action); the FAA did not rule on the motion, requiring the City to answer (14 C.F.R. § 16.26(b)(5)). (That case has since settled without an express determination regarding the Airport's status as a facility bound by Section 40103(e).)

### C.  The federal issues raised are substantial

"The exclusive rights provision is the oldest federal obligation affecting federally funded airports … The prohibition against exclusive rights [was] recodified at 49 United States Code (U.S.C.) 40103(e)) and applies to any airport upon which any federal funds have been expended." FAA Order 5190.6B[7], Airport Compliance Manual, section 8.3(b).

The exclusive jurisdiction of the U.S. Government over airspace is likewise fundamental. It has long been "the intent of Congress that there should be uniform national policy with respect to air safety" (*Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 782 (N.D. Ill. 2014)), against the "obvious peril [of] uneven enforcement of nationally applicable regulations throughout the national airspace." *Id*.

In *City of Tipp City v. City of Dayton*, the court denied a motion to remand a case that challenged airport noise. The court stated: "In light of the federal government's extensive control over aircraft noise regulation […] the federal interest in this case is substantial. The Court, therefore, concludes that a prima facie showing has been made that Plaintiffs' nuisance claim, although stated in terms of state law, "arises under" federal law, and that this Court has subject matter jurisdiction over same." *Id*., 204 F.R.D. 388, 396 (S.D. Ohio 2001).

---

[6] Arising from the same City Council agenda item and discussion as the instant case.
[7] https://www.faa.gov/documentLibrary/media/Order/Order_5190.6B_Compliance_Chg3.pdf

**D.   These issues are capable of resolution in federal court without disrupting the federal-state balance approved by Congress**

Nothing in the record suggests any disruption of the federal-state balance approved by Congress. Indeed, actions such as this are routinely brought in federal court directly (see, e.g., 4 Am. Jur. Pl. & Pr. Forms Aviation § 108.50 (Complaint in federal court—Municipal regulation of airspace preempted by federal law).

**III.   Conclusion**

The TAA's Complaint currently raises issues of interpretation of federal law, and thus arises from the laws of the United States. The TAA's expected amended complaint will only further implicate federal law. These laws were enacted to codify important public policy and their application here is hotly disputed between the parties (and between the City and the federal government itself). Resolving these substantial, important, federal issues here does not offend any Congressional scheme, and the Court may properly, and should, retain jurisdiction.

Respectfully submitted,

DAVID M. SHABY II & ASSOCIATES

Date: May 6, 2024         By: _____
                          R. Christopher Harshman, Esq.
                          Attorneys for Torrance Airport Association